### DECEMBER TERM, 1854;
#### AND AT THE
### CIRCUIT SESSION IN SEPTEMBER, 1855.

---

### PRESENT,

HON. ISAAC F. REDFIELD, CHIEF JUDGE.

HON. PIERPOINT ISHAM, } ASSISTANT JUDGES.
HON. MILO L. BENNETT, }

---

## JOHN HERRICK v. R. NOBLE AND SONS.

*Contract. Resort to parol testimony in construction of written contracts.*

In the construction of written contracts, where the words used are specific and explicit, parol evidence cannot be resorted to, to show that the parties used the words in an unusual and extraordinary sense.

Where, in a written contract for finishing a stone house, the walls of which were already built so unevenly as to require lathing, there was a provision for doing the furring "for the whole house"; *it was held* that the party could not show by parol testimony, that, in

2

this provision, the partitions only, and not the walls were meant;—and that without proof, that, in houses built in that manner, it was the *universal* custom to plaster directly upon the walls without lathing, or that there was a subsequent contract between the parties that the furring of the walls should be paid for as extra work, it was improper to submit to the jury the construction of this part of the contract.

Where in such a contract it was stipulated as follows : " The work to be done in the best " style and design of the present time, and adapted to such a house and its several parts " and in as good a style, and workmanship, and finish, as any in Burlington, Vt." ; *it was held,* that the parties thereby intended to limit the expensiveness of the styles, designs or patterns of the finish to the style, and workmanship, and finish of the best houses in Burlington ; and that the fact that the parties, or their agents, after the making of the contract, went to the cities of Troy and New York to examine the different styles in use there, did not amount to any definite practical construction of the contract, as referring to styles and designs prevailing elsewhere than in Burlington.

ASSUMPSIT for work and labor.  Plea, general issue, trial by jury, September Term, 1852,— POLAND, J. presiding.

The plaintiff, in April, 1850, entered into a written contract to do certain work for the finishing of a new stone house of the defendants in Essex, N. Y.  The written contract had attached to it specifications and estimates of the contemplated finish, among which were the following, viz: " Partitions and furrings for the house $45,00", " furrowing ceilings" $5,00" ; which were referred to by the contract, in the body of which, were the following stipulations : " The furrowing, except for the basement, for the whole house, to " be done ready for lathing."  *  *  " The work to be done in the " best style and design of the present time, and adapted to such a " house and its several parts, and in as good a style, and work- " manship, and finish, as any in Burlington, Vt."  The specifications referred to a pilaster finish, and, in the body of the contract, there was a provision that the defendants might make alterations in the plan and work, in which case the prices were to be varied, &c.

The plaintiff claimed to recover $38,00 for extra furring, and introduced testimony, which was objected to by the defendants, but admitted by the court, which tended to show that the defendants' house was built of hewn stone, with an inner wall of brick,—that in houses built in that manner, it was the ordinary and usual, though not universal custom, to plaster directly upon the brick wall without lathing,— that when the contract was made, the defendants intended to have their house plastered in that manner, but that it was afterwards discovered that the surface of the brick was so uneven as to require lathing, in order to make an even surface for

the plaster, and that the plaintiff, by the request of the defendants, put the furring on the brick walls, which, with some furring in the garret, which the defendants admitted was extra, constituted the claim for the $38,00; and it appeared that there was also some other furring to be done in the house, besides that upon the walls, but not of much amount.

The defendants claimed, that all the furring for the house was covered by the written contract, and the schedules attached to it. Upon this point the court instructed the jury, that, if there was no other furring to be done in the house except such as plaintiff claimed to be extra, then the furring named in the contract must be intended to cover this; but if there was other furring beside this to which the contract might apply, that it would be for the jury to say whether this furring of the brick walls was covered by the contract or not, and that for this purpose, they were to consider the language of the contract itself, the condition of the brick walls at the time, the general practice in such cases, and the subsequent acts and agreements of the parties in relation thereto.

The plaintiff also claimed to recover for "finishing extra from pilaster finish $200,00", in reference to which his testimony tended to prove that, soon after he commenced work under the contract, the defendants concluded to have their house finished, not in the pilaster style originally intended, but in the architrave style, which is entirely different; and that the plaintiff thereupon finished the house in the architrave style, which was more expensive, and required more work, than to have finished it according to the best modern style of pilaster work used in Burlington. The defendants introduced testimony tending to prove that, soon after the making of the contract, one of the defendants, with one of the plaintiff's workmen, went to the cities of New York and Troy, and examined various houses there for the purpose of enabling the defendants to select a style of finish, and that, on their return, the architrave was adopted instead of the pilaster style;—that, in the city of New York and other American cities, there were many houses finished in a pilaster style which was much more costly than any in Burlington, and more expensive than the architrave put by the plaintiff on the defendants' house. The defendants claimed, among other things, that the plaintiff's sending one of his men with the

2*

defendant to the cities, as above stated, was evidence of a practical construction of the contract, by which the parties treated it as having reference to styles and designs of pilaster finish prevailing elsewhere than in Burlington; and requested the court so to instruct the jury. But the court charged that, by the true construction of the written contract, the plaintiff was only bound to finish the defendants' house at the price named in the contract, with such a pilaster finish as was equal to the best modern style in Burlington; and that if the architrave style, adopted by the defendants, was more expensive than such pilaster, the plaintiff would be entitled to recover the proportionate difference, above the prices named in the contract. Verdict for the plaintiff. Exceptions by the defendants.

*Geo. F. Edmunds* for the defendants.

Parol evidence, beyond showing the condition of the house at the time, was improper, for the language of the contract is *perfectly explicit.* Upon this subject, the court left the construction of the contract entirely to the jury. They were directed to ascertain whether there was "any other furring to which the contract might apply", without being told to *what* other furring the contract would apply upon the evidence. *Mason* v. *Silver*, 1 Aik. 367.

The court erred in excluding from the consideration of the jury, the evidence of the subsequent acts of the parties, giving a practical construction to the language of the contract. In every case where the true construction of the contract is open to any degree of doubt, parol proof of the contemporaneous, or subsequent acts of the parties, is admissible. *Austin* v. *Wheeler*, 16 Vt. 95. *Lowry* v. *Adams*, 22 Vt. 160. *Patrick* v. *Grant*, 2 Shep. 233. *Hasbrook* v. *Grant*, 1 Barb. 635. *Knight* v. *N. E. Worsted Co*, 2 Cush. 271.

*W. W. Peck* and *E. Harvey* for the plaintiff.

The opinion of the court was delivered by

REDFIELD, CH. J. I. The first item in the plaintiff's account, for furring the walls of the defendants' house to fit it for lathing, would seem to be included in the contract, unless there was something very decisive, to show that the terms used in the contract might be satisfied short of that. In the body of the contract, the

plaintiff undertakes to do "the furrowing, except for the basement, for the *whole* house". And in the specifications, or estimates, we find one item, "Partitions and furrowing, *for the house* $45,00". There is then "furrowing ceiling", which might have been regarded as extra, or it might not; at all events, the terms in the body of the contract, "furrowing for the *whole* house", must certainly include all that was necessary in the ordinary mode of finishing houses of that description. And when it is considered, that the walls were then ready to receive the finish, we must construe these terms, with reference to this particular house, as including all the furring necessary to finish this house, in the terms of the contract, "according to the best style and design of the present time, and adapted to such a house and its several parts, and in as good a style and workmanship and finish as any in Burlington".

Now, it is a settled rule of construction of contracts, that where the words used are specific and explicit, parol evidence cannot be resorted to, to show, that the parties used these words in an unusual, and extraordinary sense; as to show, for instance, that by the whole house, the parties meant one room, or only the partitions.

I should not be prepared to say, that if the testimony showed that it was the universal practice not to fur such brick walls, that it would afford sufficient ground for limiting the terms "whole house", so as to exclude these walls; but the testimony given did not amount to that, but only that it was the ordinary and usual mode, though not universal custom. And we do not learn that it was not, in fact, necessary in this house; but the case finds that the brick were so uneven as to require lathing, and furring of course. And as these walls were then open to inspection, it was the plaintiff's folly to stipulate to do the furring for the *whole house*, without knowing whether the walls required it. To admit evidence to show that the parties did not so understand it at the time, is merely receiving their declarations to control the common and obvious import of the terms used, when there is nothing equivocal, and is liable to all the objection that lies against any species of oral evidence, to control a written contract. And the case does not say, that any evidence was given to show a subsequent contract between the parties, that this furring should be paid for as extra work, which it would no doubt be competent for the plaintiff to show.

But all the evidence in the case was, that the plaintiff, by the request of the defendants, did the work, and there was no evidence tending to show that the parties had any agreement, understanding, or expectation that the expense should be treated as extra work. We think, then, under the state of the evidence, it was improper to submit the construction of the contract, in this particular, to the jury.

If it were not the universal custom not to lath brick walls, this workman was bound to know it, and to have inspected the walls of this house, and will now be presumed to have done so. If it were the uniform practice in such cases, not to lath, then furring for the "whole house", does *ex vi termini* include this, and such testimony is competent to limit and define the terms used. Or, possibly, if the house had not been open to inspection, the parties would be bound by the ordinary import of the words, with reference to the general class of similar objects. Some cases hold one way, upon this last point, and some the other. The more recent cases favor the admission of such evidence.

II. In regard to the second point, the terms used are, perhaps, more liable to possible construction; but taken all together, with reference to the subject matter and the situation of the parties, which are all regarded as permissible means of coming at the construction of written contracts, we are inclined to believe the parties did intend to limit the *expensiveness* of the styles, designs, or patterns, of the finish to the style, and workmanship, and finish of the best houses in Burlington. The expression in regard to Burlington, is not the style *of* workmanship, but the style *and* workmanship, and finish, which seems to me but a recapitulation of the import of the former terms, "style and design of the present time". I can have little doubt that the term "style" was used, in the first instance, as equivalent to "design", or patterns, and also in the second instance, thus tying it down to Burlington, as to its expensiveness. And as the estimates were already made, it would be natural it should have been done with reference to the region of country, or the vicinity, where they are made. This certainly would be the fair and obvious import of the terms used, unless there were something to show they were used with reference to a different locality. And the fact merely, that afterward they vis-

ited the cities to see the different styles in use there, could amount to no definite practical construction of the contract, until they took some definite step in selecting a model, which, if they had done, might have been binding upon the parties as a practical construction of the contract, but which they did not do.

But the merely going there, is too remote and indefinite in its object and purpose, to amount to any practical construction of the contract. They might have been willing to allow the defendants a wider selection than the contract, even, if he kept within the *same expense*; or, the defendants might possibly have had in mind that they would look up the very style, which did suit their fancy, and then if it came within the contract, well; if not, they would exercise their right of varying from it as they did, and the plaintiff might have gone, at defendants' expense, to enable the defendants to exercise their unlimited selection of the styles of finish, which they had the right to do under the contract. But if they chose one more expensive than the estimates, which were, by the contract, made to conform to the best modern style in Burlington, they must pay the difference which the plaintiff now seeks to recover. In either view, it would be needful for the plaintiff's workman to go, in order to take drawings or descriptions of the model selected.

The truth is, that the testimony offered to give a construction to the words of the contract, is altogether more indefinite and equivocal than the words themselves. Had a model been selected and acquiesced in, as coming within the general import of the first contract, it would have afforded great aid in determining the precise import of the contract itself, and I should have little doubt such testimony might have been admitted consistently with the decided cases.

Judgment reversed and case remanded,